WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Timothy R. Wheeler
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000
(212) 490-3038 (facsimile)

*Attorneys for Bank of America, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **In re:** | : Hearing: October 3, 2022, 10:00 a.m. <br> : Chapter 11 <br> : |
| **LUCKY STAR-DEER PARK LLC**, *et al.*, | : Lead Case No. 20-73301 (REG) <br> : Jointly Administered |
| **Debtors.** | : Indiv. Case No. 20-73327 (REG) <br> : |

**RESPONSE OF BANK OF AMERICA, N.A. TO**
**THE COURT'S ORDER SCHEDULING HEARING**

TO:    THE HONORABLE ROBERT E. GROSSMAN
       UNITED STATES BANKRUPTCY JUDGE

Bank of America, N.A. (the "**Bank**"), a creditor of debtor Queen Elizabeth Realty Corp.

("**QERC**" or, the "**Debtor**") of case no. 20-73327 as jointly administered under the above caption,

through its counsel, Wilson Elser Moskowitz Edelman & Dicker LLP submits this response (the

"**Response**") to the Court's *Order Scheduling Hearing* (the "**OTSC**") [Case No. 20-73327, Doc.

No. 60], and in support thereof the Bank states as follows:

**BACKGROUND**

1.    On November 3, 2020 (the "**Petition Date**"), the Debtor commenced case number

20-73327 (the "**Case**") by filing a voluntary petition for relief under chapter 11 of title 11 of the

United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the

Eastern District of New York (the "**Court**").

2.      The Debtor claims to be a "Single Asset Real Estate" business entity as that term is defined in 11 U.S.C. § 101(51B).  *See* 20-73327, Doc. No. 1, p. 2.  In the 2nd Amended Disclosure Statement (defined below) the Debtor further asserts that its business is "the ownership and management of the real property commonly known as 80 Elizabeth Street, New York (the "***Real Property***")."  *See* Doc. No. 50, 2nd Amended Disclosure Statement, p. 7.

3.      The Debtor is wholly-owned by Myint Kyaw a/k/a Jeffrey Wu.  *See* 20-72407, Doc. No. 505, p. 27 of 37.

4.      Myint Kyaw a/k/a Jeffrey Wu filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 8, 2020 (the "***Myint Kyaw Case***").  *See* 20-72407, Doc. No. 1.  Mr. Wu's bankruptcy case remains pending before this Court.

5.      As set forth in the commercial lease the Bank believes to be currently in place (the "***Lease***"), the Real Property is currently occupied by lessee Hong Kong Supermarket of Hester Corp. ("***HKS Hester***"), an entity that is also wholly-owned by Myint Kyaw a/k/a Jeffrey Wu.  *See* 20-72407, Doc. No. 505, p. 27 of 37.

6.      On November 6, 2020, the Debtor submitted amended schedules of assets and liabilities, and statement of financial affairs (as modified and amended, the "***Statements and Schedules***").  *See* Statements and Schedules, 20-73327 Doc. No. 8.

7.      Among other things, the Statements and Schedules list a secured claim for the Bank in the amount of $19,700,000.00 arising from a certain mortgage loan extended to QERC from the Bank (the "***Mortgage Loan***").  *See* Statements and Schedules, 20-73327 Doc. No. 8, Section 2.1, page 1 of 3.

8.      In addition, the Statements and Schedules list four (4) general unsecured claims in the aggregate amount of $165,064.60.  *See* Statements and Schedules, 20-73327 Doc. No. 8, Sections 3.1-3.4, page 2 of 3.

2

9.      On November 30, 2020 the Debtor filed a motion seeking authority to maintain its pre-petition Bank of America, N.A. deposit account (the "**BoA Account**"), and transfer funds into such account from the Debtor's debtor-in-possession account, and to allow the Bank to continue to debit the account and apply the payments to the Mortgage Loan in the ordinary course as existed pre-petition [20-73327, Doc. Entry No. 22], which motion the Court granted on an interim basis by order entered December 21, 2020, and thereafter on a final basis on February 11, 2021 (the "**Bank Account Order**").  *See* 20-73327, Doc. No. 33 and 20-73301, Doc. No. 64.

10.      The Bank Account Order (i) authorized the Debtor to continue to use the BoA Account; (ii) authorized the Debtor to transfer funds from its debtor-in-possession account into the BoA Account; and (iii) authorized the Bank to continue to debit the BoA Account in the ordinary course to pay down the Mortgage Loan.  *See* Bank Account Order, 20-73301, Doc. No. 64, p. 1-2.

11.      On December 21, 2020, the Debtor filed its first monthly operating report for the period November 4, 2020 to November 30, 2020 (the "**11/20 MOR**").  *See* 20-73327, Doc. No. 32.

12.      The Debtor attached a rent roll to the 11/20 MOR that indicates monthly rent due to the Debtor in the amount of $125,000 from "Hong Kong Supermarket."  *See* 20-73327, Doc. No. 32, p. 16 of 28.

13.      Since the Petition Date, the Debtor has filed twenty-two (22) monthly operating reports, each of which includes monthly bank statements for the BoA Account and the Debtor's debtor-in-possession account at Capital One Bank.  *See, for example*, 20-73327, Doc. No. 32.  The bank statements for the BoA Account and the debtor-in-possession account list various deposits since the Petition Date from "Hong Kong Supermarket" in the aggregate amount of $2,322,900.00.

14.      On December 3, 2020, the Debtor filed a motion seeking to have the Case jointly administered with three (3) other, affiliated cases the ("**Affiliated SARE Debtors**"), which motion

3

the Court granted by order entered January 14, 2021, consolidating the four (4) cases under lead case number 20-73301.  *See* 20-73327, Doc. No. 34.

15.     On December 14, 2020, the Bank filed a proof of claim in the Case (the "***Bank's POC***"), asserting a secured claim in the amount of "not less than $19,978,987.47" plus, among other things, a yet to be determined swap termination fee, interest accruing since the Petition Date, and further attorneys' fees and costs (the "***Bank's Claim***") arising from certain defaulted, unpaid obligations under certain loan documents relating to the Mortgage Loan extended by the Bank to QERC.  *See* 20-73301, Claims Registry, Claim No. 2.

16.     As acknowledged by the Debtor, the Bank's Claim is secured by a mortgage on the Real Property.  *See* 2nd Amended Disclosure Statement, p. 7; p. 11.

17.     In order to secure the Mortgage Loan in the original principal amount of $19,850,000.00, the Debtor gave the Bank a mortgage dated January 10, 2018 encumbering the Real Property (the "***Mortgage***").  A true and correct copy of the recorded Mortgage is attached hereto as **Exhibit A**.

18.     Among other things, the Mortgage provides that the Debtor "shall pay or cause to be paid prior to the due date therefor all taxes … now or hereafter levied, … which are (or if not paid, may become) a lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it."  Mortgage, p. 5, Section 5.2.

19.     Aside from the Bank's Claim, as of the date of this Response, the official claims registry includes only the following two (2) other claims: (i) Claim No. 1 (as amended) asserted by the New York State Department of Taxation & Finance as $1,748.24 (priority) and $415.40 (general unsecured) (the "***NYSDTF Claim***"); and (ii) Claim No. 3 asserted by Landmark Portfolio

Mezz LLC in the amount of $24,876,385.05 (filed as "both a proof of claim and/or a proof of equity interest") (the "***Mezz Lender Claim***").[1]  *See* Official Claims Registry, Claims 1, 3.

20.      On April 14, 2021, the Debtor filed its proposed *Debtor's Disclosure Statement for the Chapter 11 Plan Proposed by the Debtor in Possession* (the "***Disclosure Statement***").  *See* 20-73327, Doc. No. 38.

21.      In the Disclosure Statement, the Debtor describes how "[r]ecoveries projected in the Plan shall be from the Debtor's refinance of the real property" and that the Plan "provides for the refinance of the Debtor's interest in the real property."  *See* Disclosure Statement, p. 7.  However, the Debtor does not include any specific information about the proposed refinance of the real property, no commitment letters from prospective buyers/lending institutions, not even any term sheets or letters of intent.  Also missing is the projected amount of available cash proceeds arising from the alleged refinancing and an accompanying waterfall analysis detailing how much and when each creditor will be paid.

22.      In addition, among other problems, in the Disclosure Statement the Debtor does not clearly represent whether the proposed refinancing is a condition precedent to confirmation of the Plan (defined below).  *See* Disclosure Statement, p. 11.

23.      On April 14, 2021, the Debtor filed the *Debtor's Chapter 11 Plan of Reorganization* (the "***Plan***").  *See* 20-73327, Doc. No. 39.

24.      On April 14, 2021, the Court entered an order, among other things, scheduling a hearing on the adequacy of the Disclosure Statement for June 2, 2021 at 10:00 a.m.  *See* 20-73301, Doc. No. 92; 20-73327, Doc No. 40.

---

[1]      The Bank does not believe the Mezz Lender Claim was properly filed in this Case, because Landmark Portfolio Mezz LLC has no claims against QERC.  Landmark Portfolio Mezz LLC may have a contingent claim in the Myint Kyaw individual bankruptcy case, but not in this Case.

25.     On May 26, 2021, the Bank filed an objection to the adequacy of the Debtor's Disclosure Statement (the "***Objection***").  *See* 20-73301, Doc. No. 101.  In the Objection, the Bank cites numerous deficiencies included in the Disclosure Statement--most notably that it is structured around a non-existent re-financing proposal--and concludes that the related Plan is not feasible and for that and other reasons, the Plan is not confirmable.  *See* Objection, pp. 4-5.

26.     Thereafter, the Court scheduled and conducted hearings on the adequacy of the Debtor's Disclosure Statement (and other matters) on June 2, 2021, July 14, 2021, September 13, 2021, October 25, 2021, November 22, 2021, December 15, 2021, January 24, 2022, and February 23, 2022 each time adjourning the hearing to a later date with no resolution.

27.     On March 3, 2022, the Debtor filed the proposed *Debtor's First Amended Disclosure Statement for the Amended Chapter 11 Plan Proposed by the Debtor in Possession* (the "***First Amended DS***").  *See* 20-73327, Doc. No. 42.  The First Amended DS included as an exhibit an unexecuted "Debt Term Sheet" prepared on the letterhead of Invictus Real Estate Partners LLC (the "***Invictus Term Sheet***").  *See* First Amended DS, Exhibit 4.  The Invictus Term Sheet set forth the basic terms of a global, $170,000,000.00 loan, intended to re-finance certain obligations of individual chapter 11 debtor Myint Kyaw, the Affiliated SARE Debtors, and QERC (the "***Invictus Exit Financing***").  *See* Invictus Term Sheet, pp. 1-2.

28.     On March 3, 2022, the Debtor filed the proposed *Debtor's Amended Chapter 11 Plan of Reorganization* (the "***First Amended Plan***").  *See* 20-73327, Doc. No. 44.

29.     On March 31, 2022, the Debtor filed the proposed *Debtor's Second Amended Chapter 11 Plan of Reorganization* (the "***Second Amended Plan***").  *See* 20-73327, Doc. No. 48.

30.     On March 31, 2022, the Debtor filed the proposed *Second Amended Disclosure Statement for the Second Amended Chapter 11 Plan Proposed by the Debtor in Possession* (the "***Second Amended DS***").  *See* 20-73327, Doc. No. 50.

6

31.     The Second Amended DS lists the amount of the Bank's Claim as "$19,978,897.47 as of the date of the filing of its proof of claim" and proposes to pay the Bank "in full as to its allowed claim as agreed by and between the parties."  *See* Second Amended DS, p. 11.

32.     The Second Amended DS proposes to pay both the priority and general unsecured portions of the NYSDTF Claim "in full upon the Effective Date."  *See* Second Amended DS, pp. 11-12.

33.     The Second Amended DS proposes that the Mezz Lender Claim "shall not receive any distribution under the Debtor's Plan."  *See* Second Amended DS, p. 12.

34.     On April 1, 2022 the Bank filed an objection to the 2nd Amended Disclosure Statement (the "***Second Objection***").  *See* 20-73327, Doc. No. 53.  By way of the Second Objection, the Bank objected to the Second Amended DS to the extent that it proposes to pay the Bank anything less than the full amount of the Bank's Claim, including all accrued interest and fees, with credit given to the Debtor for any previously-remitted payments. *See* Second Objection, pp. 6-7.

35.     After a hearing on the adequacy of the Debtor's proposed Second Amended DS conducted April 5, 2022, on April 7, 2022, the Court executed and filed an order approving the adequacy of the Second Amended DS and scheduling a hearing to consider confirmation of the Debtor's Second Amended Plan for April 29, 2022.  *See* 20-73327, Doc. No. 54.

36.     Thereafter, the Court scheduled and conducted hearings on confirmation of the Debtor's Second Amended Plan (and other matters) on April 29, 2022, May 31, 2022, June 9, 2022, and June 16, 2022, each time adjourning the hearing to a later date with no resolution.

37.     On July 6, 2022 the Court entered an order converting the Myint Kyaw Case to a case under chapter 7 for cause pursuant to 11 U.S.C. § 1112(b) (the "***Kyaw Conversion Order***"). *See* 20-72407, Doc. No. 456.  In the Kyaw Conversion Order, the Court concluded that cause

7

existed to convert the case to a case under chapter 7 due to the debtor's failure to finalize proposed financing required to fund the debtor's proposed chapter 11 plan. *See id.*

38.     On September 7, 2022, the Court filed the OTSC noting that the Debtor had failed to propose a confirmable plan to date, and it appearing that cause exists to convert or dismiss the Debtor's case pursuant to 11 U.S.C. § 1112(b)(1), and ordering that the Debtor appear at a hearing on October 3, 2022 to show cause why this Case should not be dismissed or converted. *See* 20-73327, Doc. No. 60.

39.     As of September 21, 2022, New York City property taxes and accrued interest in the amount of $160,408.17 that became due on or before July 1, 2022, remain unpaid in connection with the Real Property. *See* property tax balance report obtained from the New York City Department of Finance "ACRIS" website attached hereto as **Exhibit B**.

40.     On September 21, 2022, the Bank filed a motion (the "***Tax Motion***") for entry of an order authorizing the Debtor to pay the outstanding New York City property taxes in connection with the Real Property, from certain settlement funds currently held in escrow by counsel for the Debtor (the "***Escrow Funds***") along with an application to have the Tax Motion heard on shortened time (the "***Application***"). *See* 20-73301, Doc. Nos. 317 and 318.

41.     The Court granted the Application and scheduled the Tax Motion for a hearing on October 3, 2022 at 10:00 a.m. by order signed and entered September 22, 2022. *See* 20-73301, Doc. No. 324.

## RESPONSE

### Cause Exists to Dismiss or Convert this Case.

42.     Bankruptcy Code Section 1112(b) provides that on the request of a party in interest, after notice and a hearing, "the court shall convert a case [under chapter 11] to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of the creditors and the

8

estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1).  Bankruptcy Code Section

1112(b)(4) enumerates a number of factors which may demonstrate "cause" for conversion or

dismissal, including substantial or continuing loss to or diminution of the estate, and the absence

of a reasonable likelihood of rehabilitation; gross mismanagement of the estate; failure to file a

disclosure statement, or to file or confirm a plan; inability to effectuate substantial consummation

of a confirmed plan; and failure to pay required fees.  *See Lippman v. Big Six Towers, Inc.*, 2021

U.S. Dist. LEXIS 86266 *6 (S.D.N.Y. 2021), *citing* 11 U.S.C. § 1112(b)(4).

43.    The factors constituting "cause" for dismissal or conversion of a chapter 11 case

include in pertinent part the following:

> (A) substantial or continuing loss to or diminution of the estate and
> the absence of a reasonable likelihood of rehabilitation;
> (B) gross mismanagement of the estate;
> *        *        *
> (D) unauthorized use of cash collateral substantially harmful to 1 or
> more creditors;
> *        *        *
> (I) failure timely to pay taxes owed after the date of the order for
> relief or to file tax returns due after the date of the order for relief;
> (J) failure to file a disclosure statement, or to file or confirm a plan,
> within the time fixed by this title or by order of the court;….

*See* 11 U.S.C. § 1112(b)(4); *see also C-TC 9th Ave. P'ship. v. Norton Co. (In re C-TC 9th Ave.

P'ship.)*, 113 F.3d. 1304, 1311 (2d Cir. 1997) (holding that the list of factors is intended to be

illustrative, and not exhaustive); *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991) (finding that the

list of standards for dismissal or conversion is not exhaustive); and *In re Cardi Ventures, Inc*. 59

B.R. 18, 21 (Bankr. S.D.N.Y. 1985) (holding that the court is not limited to the grounds set forth

in 11 U.S.C. § 1112(b) to determine cause for dismissing or converting Chapter 11 case, since the

factors contained in § 1112(b) are not exhaustive, and that the court may use its equitable powers

to reach appropriate results in individual cases).

9

**Cause Exists Because The Debtor Has Failed to Propound a Confirmable Plan**.

44.    First, as noted in the Court's OTSC, the Debtor has failed to propose a confirmable plan in the nearly twenty-three (23) months in which this case has been pending.  The Bank asserts that this fact alone establishes sufficient cause to warrant dismissal or conversion of this Case.

45.    "Courts recognize that cause under Bankruptcy Code Section 1112(b) may be established where the record shows that the debtor cannot effectuate a plan."  *In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011)

46.    "A debtor's failure to make meaningful and substantive progress toward the confirmation of a plan within the time periods fixed by the Bankruptcy Code and any court orders may lead to undue delay, and such delay is nearly always prejudicial to creditors.  If a debtor does not make progress toward confirmation of a plan within these time periods, or within in a reasonable period, then relief under Section 1112(b)(4)(J) should follow."  *Babayoff*, 445 B.R. at 79, citing *In re Van Eck*, 425 B.R. 54, 65 (Bankr. D. Conn. 2010) (cause to dismiss present after eighteen months where debtor filed plan to be funded by speculative inheritance and funds generated from entity yet to be formed); *In re Tornheim*, 181 B.R. 161, 165 (Bankr. S.D.N.Y. 1995) (cause to convert or dismiss present after sixteen months where the debtor's "failure to file a plan . . . shows both unreasonable, prejudicial delay and an inability to effectuate a plan"); *In re Larmar Estates, Inc*., 6 B.R. 933, 935 (Bankr. E.D.N.Y. 1980) (cause to convert or dismiss present after eight months where plan had not been filed, where there was "absolutely no movement toward the confirmation of a plan," and "[i]t [was] clear that the debtors [had] been unable to effectuate plans of reorganization."); *In re Photo Promotion Assocs., Inc*., 47 B.R. 454, 459 (S.D.N.Y. 1985) (cause to dismiss present after six months where Chapter 11 debtor had neither filed plan nor shown an ability to do so in the near future).

47.    "A debtor's ability to effectuate a plan may well turn on practical considerations,

including whether confirmation can be achieved.  A debtor is unable to effectuate a plan where it 'lacks the ability to formulate a plan or to carry one out.'" *Babayoff*, 445 B.R. at 76, *citing Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989); see also *In re Local Union 722 Int'l Bhd. of Teamsters*, 414 B.R. 443, 453 (Bankr. N.D. Ill. 2009) (holding that cause under Section 1112(b) was present where a single creditor held seventy-eight percent of the unsecured debt and objected to the plan because his claim was impaired, so that confirmation of a plan was impossible); *In re B & B West 164th Street Corp*., 147 B.R. 832, 842 (Bankr. E.D.N.Y. 1992) (cause under Section 1112(b) present where plan confirmation impossible over objection of creditor who controlled over one-third of a class).

48.    "As a general principle, a chapter 11 case must progress at a reasonable pace to confirmation of a plan.  Put colloquially, chapter 11 cases have a limited 'shelf life.'  This is especially true in SARE cases." *In re 1121 Pier Vill. LLC*, 635 B.R. 127, 138 (Bankr. E.D. Penn. 2022), *citing In re In re Creekside Senior Apts., L.P.,* 489 B.R. 51, 61 (B.A.P. 6th Cir. 2013); see also *In re M & C P'ship, LLC*, 2021 Bankr. LEXIS 1135, 2021 WL 1679058, at *12 (Bankr. E.D. La. Apr. 28, 2021) ("Congress intended single asset real estate cases to move expeditiously").

49.    The Debtor propounded its first Plan and Disclosure Statement in April 2021, but after several related hearings, the Debtor could not progress beyond a hearing on the adequacy of the Disclosure Statement, largely because the re-financing proposal upon which the Plan was constructed was aspirational at best.  Nearly a year later on March 3, 2022, the Debtor proposed its First Amended Plan and First Amended DS, followed by the Second Amended Plan and Second Amended DS on March 31, 2022.  Although the Court ruled that the Debtor's Second Amended DS provided adequate information and scheduled a confirmation hearing, again the Debtor could not finalize the Invictus Exit Financing and/or any other re-financing proposal necessary to confirmation of the Second Amended Plan.  In light of the status of the chapter 7 case of Myint

Kyaw—the owner of QERC—the Bank does not believe <u>any</u> re-financing proposal is possible in this Case.  In sum, as established by the Debtor's actions and inactions of the past nearly twenty-three (23) months, the Debtor has not, indeed cannot, propound a viable, confirmable plan.  For this reason, cause exists to dismiss or convert this Case.

**<u>Cause Exists to Dismiss or Convert Because the Debtor Failed to Pay Taxes</u>.**

50.    In addition, cause exists to dismiss or convert this Case arising from the Debtor's "failure timely to pay taxes owed after the date of the order for relief …."  11 U.S.C. § 1112(b)(4)(I).

51.    As set forth in the Mortgage the Debtor gave to the Bank, the Debtor is obligated to pay the property taxes on the Real Property.

52.    As of September 21, 2022, New York City property taxes and accrued interest in the amount of $160,408.17 that became due on or before July 1, 2022, remain unpaid in connection with the Real Property.  Accordingly, cause exists to dismiss or convert this Case pursuant to 11 U.S.C. § 1112(b)(4)(I).[2]

**<u>Cause Exists Because of the Debtor's Mismanagement of the Real Property</u>.**

53.    Finally, cause exists to dismiss or convert this Case due to the mismanagement of the Real Property as best established by non-payment of the New York City taxes discussed above and, by the failure of the Debtor, who is wholly-owned by Myint Kyaw, to collect rents from tenant HKS Hester—an entity also wholly-owned by Myint Kyaw.

---

[2]    As noted herein, on September 21, 2022 the Bank filed the Tax Motion seeking entry of an order authorizing the Debtor to pay the outstanding New York City property taxes in connection with the Real Property, from the Escrow Funds.  The distributions from the Escrow Funds are payable only upon order of the Court.  Accordingly, the Bank respectfully requests that unless the Tax Motion is resolved prior to the hearing on the OTSC, any order dismissing or converting this Case shall include a provision directing the proper distribution of the Escrow Funds from the Debtor to the New York City Department of Finance.

54.    As previously discussed, the rent roll attached to each of the twenty-two (22) monthly operating reports the Debtor filed in this case (the "**MORs**") lists monthly rent due from HKS Hester in the amount of $125,000.[3]  Accordingly, in those twenty-two (22) months HKS Hester should have paid the Debtor $2,750,000 (22 x $125,000 = $2,750,000).  However, the bank statements attached to the MORs list aggregate payments received from HKS Hester in the total amount of only $2,322,900.00, a difference of $427,100.00.  The Bank asserts that allowing HKS Hester to withhold rent payments at the expense of the QERC estate and its creditors constitutes mismanagement of QERC.  As such, cause exists to dismiss or convert this Case under 11 U.S.C. § 1112(b)(4)(B).

**No Unusual Circumstances Are Present**.

55.    "Section 1112(b)(1) provides that once cause is established, the case shall be dismissed or converted unless the Court specifically finds unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate."  *In re Westhampton Coachworks, Ltd*., 2010 Bankr. LEXIS 4967 *12 (Bankr. E.D.N.Y. 2010), *citing* 11 U.S.C. 1112(b)(1).  "Section 1112(b)(2) places the burden of proof of demonstrating such special circumstances on the debtor."  *Id*.

56.    The Bank asserts that no such "unusual circumstances" are present in this Case and as such, the Case should be dismissed or converted.

**Dismissal of this Case Is in the Best Interests of Creditors**.

57.    The Bank believes that in light of the facts on the record and the circumstances present, dismissal is in the best interests of creditors and is the most appropriate remedy available

---

[3]    The Bank believes that the monthly rent due under the Lease may actually be substantially higher than the $125,000 per month noted on the rent roll and expressly preserves and reserves the right to assert that position at any time in the future.

13

in this Case.

58.     "Once cause for relief under Section 1112(b) has been found, the court must decide whether conversion or dismissal is the appropriate path.  There is no 'bright-line test to determine [whether] conversion or dismissal is in the best interests of creditors and the estate.'"  *Babayoff*, 445 B.R. at 81, *quoting In re Westhampton Coachworks, Ltd*., 2010 Bankr. LEXIS 4967, 2010 WL 5348422, at *6 (Bankr. E.D.N.Y. 2010) (other citations omitted).

59.     After consideration of the best interests of the estate and of other creditors, the Bankruptcy Court has broad discretion under U.S.C. § 1112(b) to dismiss a Chapter 11 case for cause.  *See In re Hampton Hotel Investors, L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001); *In re Larmar Estates, Inc.*, 6 B.R. 933, 937 (Bankr. E.D.N.Y. 1980); and *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 985 (Bankr. N.D.N.Y. 1988).

60.     The Debtor, as owner of the Real Property, filed this case designating its business as "Single Asset Real Estate."  The Bank, holder of the first priority Mortgage on the Real Property, is the sole secured creditor.  The Bank acknowledges that two or three creditors may hold relatively small unsecured claims in this case, however, the Bank takes the position that this is essentially a two-party dispute that belongs in state court.  The Bank further asserts that there is no legitimate "bankruptcy" purpose to pursue in this Case, and conversion to chapter 7 will only result in additional, unnecessary administrative costs.  For these reasons, dismissal is in the best interests of creditors and as such, the Bank respectfully requests that the Court dismiss this Case in its entirety.

## **CONCLUSION**

61.     In conclusion, the Bank believes that cause exists for dismissal or conversion of this Case pursuant to 11 U.S.C § 1112(b)(4).  Further, the Banks takes the position that dismissal of this Case is in the best interests of the estate and creditors.

62.    The Bank expressly reserves and preserves all available rights and remedies, including without limitation the right to assert other and further arguments at the hearing on the Court's OTSC.

WHEREFORE, for all of the reasons set forth herein, the Bank respectfully requests that after disposition of the Tax Motion including distribution of the Escrow Funds to the New York City Department of Finance, the Court enter an order dismissing this Case in its entirety for cause, together with such other and further relief this Court deems just and proper.

Dated:    September 23, 2022

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

/s/ Timothy R. Wheeler
Timothy R. Wheeler
150 E 42nd Street
New York, New York 10017
(212) 490-3000
(212) 490-3038 (facsimile)
timothy.wheeler@wilsonelser.com

*Attorneys for Bank of America, N.A.*

15

## CERTIFICATE OF SERVICE

I, Timothy R. Wheeler, hereby certify that on September 23, 2022, I caused a copy of the foregoing *Response of Bank of America, N.A. to the Court's Order Scheduling Hearing* to be served electronically through the Court's CM/ECF electronic case management system upon the registered participants as identified on the Notice of Electronic Filing.

Dated:   September 23, 2022

        /s/ *Timothy R. Wheeler*
        Timothy R. Wheeler

16

275537234v.4